**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

**No. 00-20787**
_____


**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**


**VERSUS**


**BOBBY JOE WILLIAMS, II; MAY BELLE WILLIAMS,**
**also known as May Belle Slough,**

**Defendants-Appellants.**


_____

Appeals from the United States District Court
for the Southern District of Texas
(H-98-CR-209)
_____


February 5, 2002

Before SMITH, DeMOSS, Circuit Judges, and LAKE, District Judge.[*]

PER CURIAM:[**]

The appellants, Bobby Joe Williams (Bobby Joe) and his mother May Belle Williams (May Belle), were convicted of conspiracy to commit money laundering and with money laundering. In addition,

_____

[*]District Judge for the Southern District of Texas, sitting by designation.

[**]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Bobby Joe was charged with conspiring to possess methamphetamine with the intent to distribute, and with possessing methamphetamine with the intent to distribute. We affirm the judgments against both appellants.

In 1996, Bobby Joe, a resident of Spring, Texas, started to manufacture pills made with methamphetamine, which is a controlled substance. The pills were manufactured using pharmaceutical punches and dies purchased by Bobby Joe from Advanced Engineering. Robert Forrester, general manager of Advanced Engineering, showed Agent Mary Gallogly the master hobs for the punches that were made for Bobby Joe during a routine check by the DEA. The punches and related records were then turned over to Gallogly.

After it was determined that Advanced Engineering had mailed the punches to Bobby Joe's and May Belle's addresses, surveillance was conducted on their residences between January and May 1998. The surveillance resulted in the issuance of search warrants for Bobby Joe's residence and rented storage facility, and May Belle's residence. Search warrants also were issued for Andy Lewis' residence and rented storage facility. Lewis was one of Bobby Joe's drug dealing partners.

The searches produced substantial evidence against the appellants. For example, the search of Bobby Joe's storage facility resulted in the seizure of a machine capable of making up to 15,000 tablets in an eight-hour period. There also was a tally counter to count the tablets as they were produced. In addition,

2

a number of punches were recovered from the storage unit. Among the punches were ones producing a peace sign, "69," smiley face, butterfly, star, "X," "EX.CT," and a skull and crossbones. The area was covered with dust, which tested positive for methamphetamine. Authorities seized a vacuum cleaner bag, which was later determined to contain a mixture of methamphetamine. A brownish chunk substance also was recovered that was determined to contain methamphetamine. Ten plastic baggies containing 40 grams of methamphetamine was seized along with numerous pills containing methamphetamine. A total of 2.9 kilograms of mixtures containing methamphetamine were recovered from the storage unit.

On May 13, 1998, Bobby Joe was arrested. On May 21, 1998, search warrants were executed on two safety deposit boxes at World Savings & Loan Bank. One of the boxes was in the names of May Belle and Bobby J. Williams. Only documents were recovered when that box was searched, most of which bore the names of May Belle Williams and May Belle Slough. Notably, May Belle had entered the box on May 16. The second box was in the names of Bobby Williams and Juanita Ray. Ray is May Belle's mother and Bobby Joe's grandmother. That box contained $27,950 in 13 envelopes marked on the outside with an amount corresponding to the amount inside.

A Drug Enforcement Agency (DEA) forensic chemist trained to determine whether tablets are clandestinely manufactured analyzed samples of the tablets seized. Tablets seized from Bobby Joe's

3

storage unit were determined to have been made by the same punches that were used to make methamphetamine tablets seized from Lewis' Federal Express shipment in Houston on April 28, 1998. They also matched methamphetamine tablets seized in Georgia on August 28, 1997, and in Colorado on September 12, 1997. In addition, a match was made with tablets seized in Louisiana on January 25 and 26, 1998, and in Florida on June 25 and August 20, 1998. Matches also were made with dextromethorphan tablets seized in New Jersey on February 21, 1998, and in New York on March 18, 1998. A match also was made with tablets seized in Seattle, Washington.

In August 1998, Calvin Sowa, Bobby Joe's supplier of methamphetamine, decided to cooperate with authorities, and he had his attorney contact the DEA. Sowa agreed to record a meeting with May Belle on September 3, 1998. During the meeting, May Belle commented about the evidence against Bobby Joe and Lewis. She also referred to removing money from a bank. In addition, she said that she had removed money from her safety deposit box and put in "deeds and stuff." She also indicated her intent to hide money in different bank accounts from the authorities, and that she would tell them that the money was hers and not Bobby Joe's.

As a result of the money reflected in bank and tax records recovered during the investigation, the Internal Revenue Service (IRS) was asked to assist in the investigation. IRS Agent Nancy Anderson reviewed the records, most of which were in Bobby Joe's name. She also obtained records from financial institutions and

4

analyzed records from approximately 25 accounts. The records revealed that during 1997, a net amount of $177,479.88 was deposited into accounts in Bobby Joe's name or in his and May Belle's name. In 1998, the net deposits were $242,115.31.

However, Bobby Joe did not file tax returns in 1994 or 1997. In 1995, Bobby Joe reported only $717 in total income, and he reported no taxable income in 1996. Furthermore, according to his tax returns, Bobby Joe received no disposable income from Williams Home Improvement in 1995 or 1996. Moreover, a financial statement prepared in October 1995 indicated that Bobby Joe had cash assets of only $43,000 and a residence valued at $85,000. In January 1998, Bobby Joe made two monetary transactions involving the purchase of two Mercedes Benz vehicles from Intercontinental Motors. The down payments were $34,500 and $35,507.82, made with cash in excess of $9,000 in each instance and cashier's checks in excess of $22,000 in each instance.

Records also showed that during 1997 and 1998, more than $400,000, excluding May Belle's payroll checks, was deposited into numerous bank accounts containing drug proceeds. These accounts were controlled by both Bobby Joe and May Belle. May Belle admitted to moving $200,000 from these accounts after Bobby Joe was arrested. She also made frequent deposits into these accounts and made regular payments of $3,000 on Bobby Joe's house note and $597 on his car notes.

Bobby Joe and May Belle were charged by superseding indictment

5

on October 7, 1998, with conspiracy to commit money laundering and with money laundering in violation of 18 U.S.C. §§ 2, 1956(a)(1)(B)(i), and 1956(h). Bobby Joe was additionally charged with: conspiracy to possess methamphetamine with the intent to distribute, possessing methamphetamine with the intent to distribute, and with additional counts of money laundering in violation of 18 U.S.C. §§ 1957 and 21 U.S.C. §§ 841(b)(1)(A)(viii). A jury found both appellants guilty as charged. The district court sentenced Bobby Joe to 360 months' confinement, to five years of supervised release, and imposed a $25,000 fine and a $1,000 special assessment. The district court sentenced May Belle to 97 months' confinement, to three years of supervised release, and imposed a $12,500 fine and a $600 special assessment.

Both Bobby Joe and May Belle now appeal. Bobby Joe raises the following issues in his *pro se* brief: (1) whether his conviction for conspiracy and possession with intent to distribute methamphetamine must be reversed for the government's failure to allege the drug amount in the superceding indictment, and for the government's failure to prove the drug amount beyond a reasonable doubt at trial as required by ***Apprendi v. New Jersey***, 530 U.S. 466 (2000); (2) whether the evidence at trial was insufficient to prove beyond a reasonable doubt that he committed the offense of conspiracy to commit money laundering as alleged in the superceding indictment; (3) whether the evidence at trial was insufficient to

prove beyond a reasonable doubt that he committed the offense of money laundering as alleged in the superceding indictment; and (4) whether the district court abused its discretion for failing to grant a new trial based on newly discovered evidence. In addition, the brief submitted by counsel before Bobby Joe chose to proceed *pro se*, presented the argument that the district court erred in finding Bobby Joe competent to stand trial.[1]

The following issues have been raised by May Belle: (1) whether the evidence is sufficient to sustain her conviction; (2) whether the district court erred in refusing to grant a new trial; (3) whether the district court erred in allowing the government to vouch for the credibility of Calvin Sowa; and (4) whether the district court erred in assessing a sentence based upon the amount of proceeds laundered and her knowledge that the money laundered was derived from illegal drug trafficking activity.

Having carefully reviewed the entire record of this case, and having fully considered the parties' respective briefings on the above issues, we are persuaded that there are no reversible errors

---

[1]Bobby Joe moved this Court to enter an order withdrawing his counsel of record on appeal and to strike the brief that had been submitted on his behalf. Although this Court granted Bobby Joe's motion to withdraw his counsel and proceed *pro se*, we did not grant his motion to strike his counsel's brief. Rather, we allowed Bobby Joe to submit a supplemental brief. Bobby Joe's supplemental brief does not address the issue regarding his competency to stand trial, which was in his counsel's brief. Nevertheless, because we did not strike his counsel's brief from the record, we have considered that issue in this appeal.

in the district court's disposition of this case.  Therefore, the district court is in all respects AFFIRMED.